UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )       No.:   3:19-CR-151-TAV-DCP-2
                                )
USHERY M. STEWART,              )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on January 12, 2021 [Doc. 326]. The R&R addresses defendant's Motion to Suppress Search of 301 Lippencott and for a *Franks*[1] Hearing [Doc. 191]. The government responded [Doc. 231], defendant replied [Doc. 245], and Judge Poplin held a hearing on the motion on November 20, 2020 [Doc. 292]. Judge Poplin then issued the R&R [Doc. 326], recommending that the Court deny defendant's motion. Defendant has filed objections to the R&R [Doc. 334], the government has responded [Doc. 335], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 334], **ACCEPT** the R&R [Doc. 326] in

_____

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

part,[2] and **DENY** defendant's Motion to Suppress Search of 301 Lippencott and for a *Franks* Hearing [Doc. 191].

## I. Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. Moreover, the Court notes that the parties do not object to the factual basis in the magistrate judge's R&R, and therefore, the Court will adopt the following facts from the R&R [Doc. 326].

Defendant is charged in the Second Superseding Indictment with conspiring to possess and distribute Schedule I, II, III, and IV controlled substances, including 50 grams or more of methamphetamine, as well as a quantity of fentanyl, oxycodone, alprazolam, marijuana, buprenorphine, and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C), (b)(1)(D), (b)(1)(E), and (b)(2) (Count 1), aiding and abetting the possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2) (Count 2); conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h) (Count 3), and aiding and abetting to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 18 U.S.C. § 2 (Count 4) [*Id.* at 1–2; Doc. 243].

---

[2] The Court will accept the R&R with the exception of the magistrate judge's alternative holding, finding probable cause to search for a cell phone at defendant's residence. This holding is located in the last paragraph beginning on page 23 and the first paragraph beginning on page 24 of the R&R. [*See* Doc. 326, pp. 23–24].

The initial Indictment was returned by the grand jury on September 4, 2019, against defendant and several other codefendants [*Id.* at 2]. A search warrant was also obtained for defendant's alleged residence—301 Lippencott Street, Apartment 512, Knoxville, Tennessee ("301 Lippencott")—by law enforcement on September 4, 2019, and included the affidavit of Federal Bureau of Investigation ("FBI") Task Force Officer Brandon Stryker [*Id.*].

The affidavit stated that in May 2018, the Knoxville Police Department ("KPD") and FBI began investigating the Knoxville "set" of the Almighty Vice Lord Nation, known as the "Unknown Vice Lords" or "Ghost Mob" [Doc. 191-1, ¶ 7]. Law enforcement suspected that Alim Turner was the leader of the Knoxville "set" of the Unknown Vice Lords, and defendant worked with Turner and others to distribute methamphetamine [*Id.*]. Wiretap recordings indicated that defendant and Turner were purchasing and reselling illegal narcotics [*Id.*, ¶ 9]. Specifically, in a phone call on June 25, 2019, defendant appears to tell Turner that he was trying to obtain some money, and was trying to sell "blues," which law enforcement believe to be a reference to oxycodone pills [*Id.*, ¶ 11]. In another call that same day, Turner discussed purchasing two ounces of methamphetamine from defendant, which he refers to as "ice cream," and defendant and Turner agreed on a price of $275 for the methamphetamine [*Id.*, ¶ 12]. In July 2019, intercepted conversations indicated that Turner and defendant were discussing shipping pounds of methamphetamine to the Eastern District of Tennessee, and law enforcement ultimately intercepted a package shipped to "Joe Stewart," containing approximately five pounds of methamphetamine

3

[*Id.*, ¶ 13].  After Turner was arrested, law enforcement intercepted a call, in which defendant and another co-conspirator appeared to be discussing purchasing approximately $16,000 worth of methamphetamine from their source of supply in Nashville, Tennessee [*Id.*, ¶ 14].  The same day, defendant and another co-conspirator were observed meeting another individual and handing him a bag of dog food, and which was later determined to contain $13,130, which law enforcement believe was headed to Nashville as payment for methamphetamine being shipped to the Eastern District of Tennessee [*Id.*, ¶ 15].

Law enforcement executed the search warrant on September 5, 2019, and found a Kel-Tec .9 mm rifle with a loaded magazine, multiple cell phones, a scale and grinder with possible drug residue, prescription pills for another individual, assorted ammunition, and $554 in U.S. currency [Doc. 326, p. 2].

## II.    Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Accordingly, the Court considers the R&R, the motion for *Franks* hearing, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

## III.    Analysis

Defendant raises two objections to the magistrate judge's R&R.  Specifically, he objects to (1) the magistrate judge's conclusion that he has not made a substantial preliminary showing that false statements were included in the search warrant affidavit

4

knowingly, intentionally, or with reckless disregard for the truth, thereby warranting a *Franks* hearing; and (2) the magistrate judge's conclusion that the search warrant established a sufficient nexus between the things to be seized and the residence to be searched [Doc. 334, pp. 2, 8].

### A.    Affiant's Culpability in False Statements

In his motion, defendant points to three paragraphs of the affidavit that he alleges contain false information [Doc. 191, pp. 3–6].  First, defendant points to Paragraph 13, detailing a July 2019 conversation between defendant and Turner regarding shipping pounds of methamphetamine into this district, and contends that no such conversation is included in the transcripts of intercepted phone calls in July 2019 [*Id*. at 3].  Defendant also argues that the "irregular formatting"[3] of Paragraph 13 indicates that the affiant acted intentionally or with a reckless disregard for the truth [*Id*. at 4–5].  Second, defendant points to Paragraph 9, which attributes the intercepted phone calls to a wiretap of phone number "423-395-5574";[4] however, defendant argues that no court order provided for a wiretap of that phone number [*Id*. at 5].  Finally, defendant argues that Paragraph 15 falsely states that he delivered the bag of dog food which contained a large amount of cash, but FBI reports

---

[3]    Specifically, defendant refers to the fact that Paragraphs 11, 12, 14, and 15 all listed specific dates of the intercepted phone calls, followed by direct quotations from the phone calls, and then law enforcement's interpretation of what the parties were discussing [Doc. 191, pp. 4–5; Doc. 191-1, ¶¶ 11–12, 14–15].  Paragraph 13, by contrast, lists only the more general date of "July of 2019" and a summary of the conversation, without any direct quotations [Doc. 191, pp. 4–5; Doc. 191, ¶ 13].

[4]    As the government points out in its response, defendant himself incorrectly recites the phone number in his briefing, and the phone number actually listed in the affidavit is 423-295-5574 [Doc. 191-1, ¶ 9; Doc. 231, p. 34 n.5].

5

indicated only that defendant exited a BMW vehicle, entered a Honda vehicle, and then returned to the BMW, but did not mention any bag of dog food [*Id*. at 6].

The government concedes that: (1) Paragraph 13 incorrectly lists the date as July 2019, when the conversation actually occurred on June 30, 2019; (2) Paragraph 9 incorrectly lists the phone number that was wiretapped as 423-295-5574, rather than the correct phone number of 865-455-0315; and (3) Paragraph 15 incorrectly states that surveillance observed defendant deliver a bag of dog food to codefendant Kedaris Gilmore, when it was actually Gilmore who procured the dog food bag in which the money was hidden [Doc. 231, pp. 34–38]. However, the government argues that each of these inconsistencies is immaterial [*Id*.].

In addressing these conceded inaccuracies, Judge Poplin concluded that the inaccuracy in Paragraph 9, relating to the wiretap telephone number, was an "unimportant allegation," and the error was mere negligence, which was insufficient to merit a *Franks* hearing [Doc. 326, pp. 10–11]. As to Paragraph 13, Judge Poplin did not find that the incorrect date of the phone conversation detailed therein was sufficient, again, finding that it was, at most, the result of negligence or innocent mistake [*Id*. at 12]. Judge Poplin also found that Defendant's arguments based on any irregularity in the format of Paragraph 13 and the surrounding paragraphs were mere conclusory allegations [*Id*. at 13]. Ultimately, Judge Poplin concluded that, while there were inaccuracies in the affidavit, defendant has not established how those inaccuracies were deliberate falsehoods or made with reckless

disregard for the truth [*Id*. at 14]. Thus, Judge Poplin found that defendant has not met his burden to establish the necessity of a *Franks* hearing [*Id*. at 15].

Defendant objects to Judge Poplin's conclusion that he failed to make a substantial preliminary showing that a false statement, made knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit [Doc. 334, p. 8]. Defendant notes that Judge Poplin agreed that three paragraphs contained statements that were incorrect [*Id*.]. As to the culpable mental state of the affiant, defendant's arguments are largely "copy and pasted" from his initial motion [*Compare* Doc. 334, pp. 8–10, *with* Doc. 191, pp. 3–5]. Defendant adds that the transcript of the phone call discussed in Paragraph 13 of the affidavit reveals the likely reason that the affiant failed to include its specifics, namely, that defendant and Turner discussed an exchange of drugs between Turner and codefendant Christopher Hounschell, rather than between defendant and Turner [*Id*. at 10]. As to Paragraph 15, defendant contends that: (1) the affiant's attempt to mislead or obfuscate the truth in Paragraph 13 should be considered relevant to the finding of a culpable mental state as to Paragraph 15, and (2) because Judge Poplin found that he has not made a preliminary showing, the materiality of the false statement in Paragraph 15 is irrelevant [*Id*. at 10–11].

The government responds that defendant's objection merely rehashes the same arguments previously raised about the same non-material inaccuracies in the affidavit [Doc. 335, p. 4].

First, to the extent that defendant's objection to Judge Poplin's recommendation on his request for a *Franks* hearing is merely resubmission of the arguments in his initial motion, such is not a proper objection.  Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  If "objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).  Thus, to the extent that defendant's objections merely "copy and paste" the arguments presented to the magistrate judge, his objections are **OVERRULED**.  The Court will now turn to defendant's specific arguments addressing Paragraphs 13 and 15 of the affidavit.

When a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  Under *Franks*, the defendant must (1) make a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false, and (2) demonstrate that the challenged statements are necessary to a finding of probable cause.  *Id*. at 171; *United*

8

*States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001). Allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof, and allegations of negligence or innocent mistake are insufficient. *Id*. at 171.

An affidavit which omits potentially exculpatory information is less likely to present a question of impermissible conduct than one that includes false information. *Graham*, 275 F.3d at 506. A *Franks* hearing is only merited in cases of omission in rare circumstances. *Id*. Indeed, a *Franks* hearing is warranted in the case of the omission of disputed facts only when defendant presents a "strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit." *United States v. Shaffer*, 238 F. Supp. 3d 913, 918 (E.D. Ky. 2017) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original)).

Paragraph 13 alleges, in relevant part, that, in July 2019, law enforcement intercepted conversations in which defendant and Turner discussed plans to have pounds of methamphetamine shipped to the Eastern District of Tennessee [Doc. 191-1, ¶ 13]. The government has conceded that the July 2019 date was incorrect, and that, in fact, the conversation occurred on June 30, 2019 [Doc. 231, p. 34]. The government further provided a transcript of the intercepted call, in which the following exchange takes place:

US:[5]   Hello?

AT:    What's poppin'?

US:    I'm just makin' sure you straight, P.

---

[5] "US" refers to Ushery Stewart and "AT" refers to Alim Turner [Doc. 231-7, p. 1].

AT:     Yeah, I'm at, uh, Nashville.  Hey—

US:     Yeah.

AT:     Hey, has Woogie[6] said that, if I get these Ps of ice, uh, to an address then he gonna go cop 'em?

US:     Dude, that's a given bro.

AT:     Huh?

US:     That's a given.

AT:     What you mean 'that's a given'?

US:     Like, that's, of course, bro.

AT:     Aight, uh, I'm have to have them gone in a week.

US:     How many of them?

AT:     Five n****, the first time.  Then the second time, ten.

US:     Yeah.

AT:     Aight, aight so you sure we can do that thought?

US:     Yeah, as soon as he got a good spot to send 'em.

AT:     I got a, uh, I can get a spot.  Aye, though –

US:     Yeah.

[Doc. 231-7, p. 1].

Defendant's objection to Paragraph 13 essentially contends that the affiant intentionally failed to include information that the conversation "contemplated an

_____

  [6]  According to the initial indictment, "Woogie" refers to codefendant Christopher Hounschell [Doc. 3].

10

exchange of drugs by mail between Turner and Hounschell, not Turner and Stewart" [Doc. 334, p. 10]. Because defendant's claim relates to an alleged omission, he bears a heavy burden, as a *Franks* hearing is rarely merited in the case of an omission of exculpatory information. *See Graham*, 275 F.3d at 506. The Court does not find that the circumstances here warrant a *Franks* hearing. The affidavit merely states that defendant and Turner "discussed plans to have pounds of meth shipped to addresses in the Eastern District of Tennessee" [Doc. 191-1, ¶ 13]. The affidavit does not say that the methamphetamine was shipped to defendant or that defendant would sell the methamphetamine. Instead, the affidavit correctly summarizes the extent of defendant's involvement—he discussed with Turner plans to have pounds of methamphetamine shipped to the Eastern District of Tennessee. That the affidavit omitted information about a third individual's involvement in this incident does not merit a *Franks* hearing, as such information would not have been particularly relevant to the determination of whether probable cause existed to search defendant's residence for evidence of drug trafficking. Ultimately, the affiant's summary of defendant's involvement in this discussion is not "false" and the affiant's omission of Hounshell's involvement does not warrant a *Franks* hearing.

Moreover, defendant's argument for showing that the incorrect statement about his involvement with delivering the dog food bag filled with cash was made intentionally or with reckless disregard for the truth, is that the Court should consider the affiant's attempt to mislead or obfuscate the truth in Paragraph 13 [Doc. 334, pp. 10–11]. But, the Court

11

has now found that defendant has not shown that the affiant acted deliberately or with reckless disregard for the truth as to Paragraph 13. Indeed, the only portion of Paragraph 13 that defendant has established is "false" is the July 2019 date attributed to the conversation, which actually occurred one day before July 2019 began, on June 30, 2019 [*See* Doc. 231-7]. Because defendant has not established that the affiant acted deliberately or with reckless disregard for the truth in Paragraph 13, the Court must reject defendant's argument that the affiant's state of mind in writing Paragraph 13 should be considered sufficient to show that the affiant to had a culpable state of mind with regard to Paragraph 15.

Finally, defendant implicates that, in finding that he had not established a preliminary showing that the affiant acted intentionally or with reckless disregard for the truth as to the incorrect statement in Paragraph 15, Judge Poplin erroneously considered the materiality of the incorrect statement, which, according to defendant, should only be considered if reaching the second prong of the *Franks* hearing test—whether probable cause exists absent the allegedly false statement [Doc. 334, p. 11]. However, common sense dictates that the materiality of an allegedly false statement may be a proper consideration in determining whether a defendant has made a preliminary showing that an affiant acted intentionally or with reckless disregard for the truth. Rarely will a defendant have direct evidence that the affiant intentionally made false statements in the search warrant affidavit, and therefore, a defendant will normally be required to rely on circumstantial evidence in the search warrant affidavit and surrounding circumstances to

12

establish this element. The materiality of an allegedly false statement is a relevant consideration because an affiant acting intentionally or with reckless disregard for the truth, in that the affiant is seeking to mislead the magistrate judge to issue a search warrant, is significantly more likely to include material false statements, that would impact the warrant-issuing decision. On the other hand, allegedly false statements involving minor details, such as dates and telephone numbers, are more indicative of an affiant who acted with negligence in preparing the search warrant affidavit. Accordingly, the Court does not find that Judge Poplin erred in considering the materiality of the incorrect statement in Paragraph 15 of the affidavit in determining that defendant had not made a preliminary showing that the statement was made intentionally or with reckless disregard for the truth. For these reasons, defendant's objections to Judge Poplin's determinations as to his request for a *Franks* hearing are **OVERRULED**.

### B. Nexus Between Things to Be Seized and Place to Be Searched

### 1. Probable Cause

In addressing defendant's suppression argument, Judge Poplin noted that the Sixth Circuit has held that generally, if an affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, it cannot be inferred that drugs will be found at a defendant's home, even if defendant is a known drug dealer [Doc. 326, p. 18 (citing *United States v. Brown*, 828 F.3d 375, 382–84 (6th Cir. 2016))]. However, Judge Poplin also noted that the Sixth Circuit has recognized that the nexus requirement can be met without facts showing that the residence had been used in drug trafficking when the

13

affidavit establishes that defendant was a major player in a large, ongoing drug trafficking operation [*Id*. at 19 (citing *Brown*, 828 F.3d at 384 n.2)]. Judge Poplin further noted that the Eastern District of Kentucky has expanded on this, concluding that a major player in an ongoing high-quantity operation is logically more likely to maintain more illicit inventory than a small scale distributor [*Id*. at 20 (citing *United States v. Nantz*, 466 F. Supp. 733, 738–39 (E.D. Ky. 2020))].

Judge Poplin ultimately determined that the affidavit here presented overwhelming evidence that defendant was a major player in a large, ongoing drug trafficking operation [*Id*. at 21]. She noted that the affidavit set forth that defendant was working with Turner, the suspected leader of the Knoxville "set" of the Unknown Vice Lords [*Id*.]. Phone conversations indicate that Turner regularly discussed purchasing and reselling narcotics with defendant [*Id*.]. In one phone call, Turner and defendant discussed the shipment of approximately five pounds of methamphetamine [*Id*. at 22]. Moreover, the affidavit details repeated conversations between defendant and codefendant Gilmore about collecting debts to pay the source of supply after Turner's arrest [*Id*.]. Judge Poplin concluded that this evidence shows that defendant was a key participant in the procurement and distribution of large quantities of methamphetamine [*Id*.]. She also concluded that defendant took on an increased role in the conspiracy after Turner's arrest [*Id*. at 23].

Defendant first objects to Judge Poplin's conclusion that the search warrant established a sufficient nexus between the place to be searched and the things to be seized [Doc. 334, p. 2]. Defendant contends that the Sixth Circuit has held that if an affidavit in

14

support of a search warrant fails to include facts directly connecting a residence with suspected drug dealing activity, it cannot be inferred that drugs will be found at the defendant's home, even if the defendant is a known drug dealer [*Id*.]. Defendant argues that nothing in the affidavit in this case directly connected his residence to drug dealing [*Id*. at 3]. Defendant acknowledges that Judge Poplin's conclusion was based on a finding that there was overwhelming evidence that he was a major player in a large, ongoing drug trafficking operation, but contends that the affidavit's description of his activity is more aligned with a typical, run-of-the-mill drug dealing operation [*Id*. at 4–5].

The government responds that defendant's objection fails to address the general rule that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking [Doc. 335, p. 1]. *Brown*, on which defendant relies, is distinguishable from the instant case because the Sixth Circuit found the evidence of Brown's status as a drug dealer to be inadequate, while here, Judge Poplin found overwhelming evidence that defendant was a major player in a large, ongoing drug trafficking operation [*Id*. at 2].

For a search warrant to issue, an affidavit must show a likelihood that (1) the items sought are seizable by virtue of being connected with criminal activity and (2) the items will be found in the place to be searched. *United States v. O'Connor*, 723 F. App'x 302, 307 (6th Cir. 2019) (internal citations omitted). A supporting affidavit must, therefore, sufficiently demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting

Case 3:19-cr-00151-TAV-DCP   Document 383   Filed 05/13/21   Page 15 of 23   PageID #: 3066

*United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). Such connection must be specific and concrete, and not "vague" or "generalized." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 595). "Whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented." *Id*.

The Sixth Circuit has held that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking," *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008), but "a defendant's status as a drug dealer, standing alone" will not "give[] rise to a fair probability that drugs will be found in his home." *United States v. Frazier*, 423 F.3d 526, 633 (6th Cir. 2005). "Therefore, to meet the probable cause standard, an affidavit must include some facts connecting the residence to drug-dealing activity beyond just the defendant's status as a drug dealer." *United States v. Jenkins*, 743 F. App'x 636, 642 (6th Cir. 2018), *cert denied*, 139 S. Ct. 611 (2018).

The Sixth Circuit has held that an affidavit that contains no evidence that a suspect distributed narcotics from his home, used his home to store narcotics, or that any suspicious activity had taken place in the home did not establish a sufficient nexus between the home and the drugs the police sought. *Brown*, 828 F.3d at 382–85. The Circuit acknowledged that it had previously held that, in the case of drug dealers, evidence is likely to be found where the dealers live, but stated that it has never held that a suspect's status as a drug dealer, standing alone, will give a fair probability that drugs will be found in his home. *Id*. at 383 (citing *Jones*, 159 F.3d at 975; *Frazier*, 423 F.3d at 533). Instead, the Sixth Circuit

16

stated that it has required "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence," namely, "facts showing that the residence had been used in drug trafficking[.]" *Id.* In so holding, however, the Sixth Circuit stated, in a footnote, that, in some cases, it "found the nexus sufficient even though the affidavit did not contain facts showing that the residence had been used in drug trafficking," but such cases were not typical drug trafficking cases, and instead, were cases where the affidavits "contained overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation." *Id.* at 383 n.2.

The Eastern District of Kentucky recently addressed *Brown*'s language regarding defendants who are shown to be "major players in a large, ongoing drug trafficking operation." *United States v. Nantz*, 466 F. Supp. 3d 733 (E.D. Ky. 2020). In *Nantz*, the district court noted that the Sixth Circuit's language regarding a defendant being a "major player[] in a large, ongoing drug trafficking operation" can fill the inferential gap left by the absence of direct residence-nexus proof, which is consistent with *Brown*'s "dealer-status-plus" framework. *Id.* at 738. The *Nantz* court also noted that the Sixth Circuit has highlighted that, when drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor. *Id.* at 739 (quoting *Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018)). The *Nantz* court stated, however, that the inference of residential storage, based on status as a drug dealer alone, is far weaker for small-scale trafficking conspirators, but "a major player in an ongoing, high-

17

quantity operation is logically likely to maintain more illicit inventory than one or multiple discrete distributive acts would exhaust." *Id.*

Defendant does not dispute that overwhelming evidence in a search warrant application establishing that a defendant is a "major player in a large, ongoing drug trafficking operation" could be sufficient to establish the nexus requirement, but disagrees with Judge Poplin's finding that the search warrant affidavit in this case established that he was a "major player in a large, ongoing drug trafficking operation" [Doc. 334, pp. 3–5]. The Court will thus turn to the allegations in the affidavit to determine whether they establish that defendant was a major player in a large, ongoing drug trafficking operation.

The Court notes that the search warrant affidavit included that law enforcement intercepted numerous phone calls, involving the distribution of illegal substances, between defendant and Turner, who was the leader of the Knoxville "set" of the "Unknown Vice Lords" [Doc. 191-1, ¶¶ 7, 9]. In at least one phone call, Turner, the purported gang leader, apparently sought to purchase methamphetamine from defendant [*Id.*, ¶ 12]. In another phone call, defendant and Turner discussed plans to purchase several pounds of methamphetamine to be shipped to the Eastern District of Tennessee, specifically, five pounds of methamphetamine, which they planned to sell within a week, to be followed by another ten pounds of methamphetamine [*Id.*, ¶ 13]. Moreover, after Turner's arrest, defendant appeared to take the lead in the drug conspiracy, and law enforcement intercepted calls and observed events in which defendant apparently attempted to purchase

18

'over $10,000 worth of methamphetamine from a source in Nashville [*Id.*, ¶¶ 14–15]. Given these facts in the affidavit, the Court agrees with Judge Poplin's determination that the affidavit provides overwhelming evidence that defendant was a major player in a large, ongoing drug trafficking conspiracy. The Court particularly finds the facts indicating that defendant worked closely with Turner, the purported gang leader, and took an even more active role in the conspiracy after Turner's arrest show that he was a major player in this drug trafficking operation. Additionally, the Court finds that the facts indicating that the drug trafficking organization purchased pounds of methamphetamine for resale at one point, and, after Turner's arrest, attempted to purchase over $10,000 worth of methamphetamine from the source in Nashville, show that the drug trafficking conspiracy was "large" and "ongoing." Contrary to defendant's assertion, the Court does not find that the "run-of-the-mill" street-level drug dealer would be involved in purchasing such large quantities of methamphetamine. Accordingly, for these reasons, the Court agrees with Judge Poplin's conclusion that the affidavit contains overwhelming evidence that defendant was a major player in a large, ongoing drug trafficking conspiracy. Defendant's objection to Judge Poplin's finding that probable cause existed for issuance of the search warrant is therefore **OVERRULED**.[7]

---

[7] The Court pauses to note that, in addition to the argument addressed above, Judge Poplin also found that the search warrant affidavit established probable cause to search for other items, including a cell phone [Doc. 326, pp. 23–24]. Defendant has objected to this conclusion, arguing that, while the Sixth Circuit has differentiated computers and guns from drugs, on the ground that, unlike drugs, computers and guns remain in a defendant's possession, the Sixth Circuit's decision involved a computer in 2014, and the same logic does not apply to a cell phone in 2019, which is smaller and more portable [Doc. 334, p. 6].

## 2. Good Faith Exception

In the R&R, Judge Poplin concluded that, even if probable cause was lacking, the good faith exception to the exclusionary rule would apply [Doc. 326, p. 25]. Judge Poplin noted that the Sixth Circuit has held that, for an officer's reliance on a search warrant to be reasonable, there need only be "some modicum of evidence" between the criminal activity and the place to be searched [*Id*. at 25–26]. Thus, for the same reasons that she concluded that probable cause existed, Judge Poplin concluded that the affidavit was not so lacking in indicia of probable cause to render belief in its existence entirely unreasonable [*Id*. at 26].

In his objections, defendant contends that, because there was a complete absence of factual allegations to support a sufficient nexus between the place to be searched and the

In *Peffer*, the Sixth Circuit acknowledged its decision in *Brown*, and explained the need for the "dealer-status-plus" rule, stating that "unlike guns and computers that are used in the commission of a crime, when drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor." 880 F.3d at 273. In that case, however, the affidavit alleged that the defendant had used a computer in the commission of his crime, that evidence of the crime would likely be found on the computer, and that the defendant lived at the residence, which was sufficient to establish a presumption that evidence of the crime would be found at the residence. *Id*. The Eastern District of Kentucky recently found that *Peffer*'s logic applies equally to cellular phones. *Nantz*, 466 F. Supp. 3d at 741. Defendant urges the Court to find that *Nantz* was wrongly decided [Doc. 334, p. 6]. The Court notes that, while this remains an open question in the Sixth Circuit, the Circuit for the District of Columbia has held that "[p]eople ordinarily carry their cell phones with them wherever they go," and thus, to justify the search of a residence to seize a cell phone, police must provide some indication that the cell phone would be located at the residence. *United States v. Griffith*, 867 F.3d 1265, 1273 (D.C. Cir. 2017).

Ultimately, because the Court has found that the affidavit established probable cause on other grounds, and that, even absent probable cause, suppression is inappropriate in light of the good-faith exception to the exclusionary rule, the Court does not find it necessary to address defendant's objections relating to this issue. Instead, the Court will decline to adopt the portion of the R&R that addresses this alternative basis for denying defendant's motion to suppress.

20

things to be seized, reliance on the warrant could not be in good faith or objectively reasonable [Doc. 334, p. 7].

Under the good faith exception to the exclusionary rule, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The Court thus must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *Id*. at 923 n. 23. The good faith exception does not apply in four situations:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 922–23 n.23).

Under the third limitation, evidence may not be admitted at trial if it was seized under a warrant that was issued on the basis of a "bare bones" affidavit, that is, an affidavit that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id*. at 525–26 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). The Sixth Circuit has found the good faith exception applicable in cases where the affidavit contained

a minimally sufficient nexus between the illegal activity and the place to be searched. *Id.* at 526.

The Court finds that, even if the affidavit did not provide sufficient probable cause for the issuance of the search warrant of defendant's residence, a reasonably well-trained officer would not have known that the search was invalid despite the magistrate judge's issuance of the search warrant. Even if the facts presented in the affidavit were deemed insufficient to establish "overwhelming evidence" that defendant was a "major player in a large, ongoing drug trafficking organization," there is no reason that a reasonably well-trained officer would have second-guessed the magistrate judge's determination that the affidavit met that standard, and such standard was sufficient to meet the nexus requirement. Moreover, as the Court noted previously, *see supra* note 7, the affidavit also indicated that officers intended to search for cell phones which had evidence of drug trafficking activities, and whether a search warrant should issue to search a suspect's residence for a cell phone is an open question in this circuit. Given the lack of settled case law on this issue, a reasonably well-trained officer would have no reason to second-guess the magistrate judge's decision that issuance of the warrant was proper on this ground. Accordingly, the Court finds that, even if there was not sufficient probable cause to support the issuance of the search warrant, evidence seized in the search of defendant's residence should not be excluded. Defendant's objection to Judge Poplin's application of the good faith exception is therefore **OVERRULED**.

22

**IV.** **Conclusion**

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 334] are **OVERRULED**. The Court **ACCEPTS** the R&R [Doc. 326] in part, with the exception of the magistrate judge's alternative holding finding probable cause to search for a cell phone at defendant's residence, and incorporates the remainder of the R&R into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's Motion to Suppress Search of 301 Lippencott and for a *Franks* Hearing [Doc. 191].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE